UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Maureen D. Bozicevich,  Civ. File No. 05-390 (PAM/AJB)

      Plaintiff,

v.  **MEMORANDUM AND ORDER**

Jo Anne B. Barnhart,
Commissioner of Social Security,

      Defendant.

---

This matter is before the Court on Defendant's Objections to the Report and Recommendation by United States Magistrate Judge Arthur J. Boylan dated January 30, 2006 ("R&R"). Magistrate Judge Boylan recommends that the Court grant Plaintiff's Motion for Summary Judgment and deny Defendant's Motion for Summary Judgment. Defendant objects to the R&R on three grounds. The Court has conducted a de novo review of the Objections and the record. See 28 U.S.C. § 636(b)(1); D. Minn. LR 72.2(b). For the reasons that follow, the Court adopts the R&R except for the recommendation that the Court award benefits outright.

**BACKGROUND**

Plaintiff Maureen D. Bozicevich suffers from residual symptoms of Guillian-Barré Syndrome ("GBS"), a disorder caused by nerve inflammation involving progressive muscle weakness or paralysis. GBS is typically a monophasic illness that results in a rapid onset of weakness and then paralysis. (R. at 142.) Thereafter, most individuals fully recover. However, some individuals still experience fatigue and abnormal sensations. (Id. at 142-44.) Indeed, some GBS patients address fatigue as the most important cause of their dysfunction, and at

least one study has concluded that "fatigue is a prominent and highly disabling symptom" of GBS. (Id. at 423.) Bozicevich complains that she experiences extreme fatigue, as well as tingling and numbing sensations, as a result of GBS.

Bozicevich also suffers from degeneration of cartilage in her knees, which required four surgical procedures and intensive rehabilitation in the late 1980s and early 1990s. She has also endured osteoarthritic changes and arch weakness in her left foot. In addition, Bozicevich experiences blurred vision, loss of balance, and problems with concentration and memory. Finally, Bozicevich suffers from asthma.

Bozicevich completed one year of college education. She worked as a church membership secretary from 1992 to 1997, when she stopped working because fatigue inhibited her from performing job responsibilities.

**A.      Administrative Review of Disability Insurance Benefits Application**

Bozicevich applied for Social Security Disability Insurance benefits on December 11, 2001, alleging an onset disability date of April 30, 1997. The Social Security Administration denied her application initially and on reconsideration. Thereafter, Bozicevich requested and received a hearing before an administrative law judge ("ALJ").

      1.      <u>Records of Treating Physicians</u>

The administrative record shows that Bozicevich has been treated primarily by two physicians: Dr. Dale Duthoy and Dr. Thomas Jacques. Dr. Duthoy has been Bozicevich's primary care physician since 1992. He diagnosed Bozicevich with GBS in March 1996, after Bozicevich experienced a sudden onset of weakness, tingling, and loss of reflexes in her arms and legs. His records indicate that Bozicevich complained of residual effects of GBS, such as fatigue, tingling, and numbness, in September 2000 and March 2002. (R. at 274, 287.)

In January 2003, Dr. Duthoy completed a medical assessment of Bozicevich. As it relates to her physical capabilities, he determined that Bozicevich rarely can lift ten pounds but frequently can lift three to five pounds. He further found that Bozicevich can sit, but cannot climb, stoop, crouch, kneel, or crawl. He also determined that Bozicevich is not restricted in reaching, hearing, or speaking. However, he concluded that she is restricted in the following: handling, due to frequently dropping items; feeling, due to decreased sensation in her hands; pushing and pulling, due to lack of strength; and seeing, due to lack of focus in the left eye. Because of Bozicevich's asthma, Dr. Duthoy also restricted her environment with respect to temperature extremes, chemical, dust, fumes, humidity, and vibrations. He also prohibited her from heights and moving machinery. Lastly, he also noted that Bozicevich is impaired in her ability to type, concentrate, move boxes, and answer the door. (<u>Id.</u> at 322-25.)

Relating to Bozicevich's mental abilities, Dr. Duthoy determined that Bozicevich can

follow work rules, relate to coworkers, deal with the public, interact with supervisors, and function independently. However, he concluded that she cannot deal with work stress, maintain concentration, understand, or carry out even simple job instructions. (Id. at 326-27.)

Dr. Jacques, a neurologist, has treated Bozicevich on an annual basis since the GBS diagnosis. Throughout 1996, Dr. Jacques noted that Bozicevich walked normally, but experienced fatigue, tingling, and visual blurring when she had respiratory infections. In November 1996, Dr. Jacques noted that Bozicevich had increased complaints of sensory changes and had problems with fatigue and lack of coordination. (Id. at 232-36.)

In February 1997, Dr. Jacques noted that Bozicevich complained of numbness and tingling in her extremities, as well as extreme fatigue, memory loss, and the inability to concentrate. In January 1998, Dr. Jacques remarked that Bozicevich complained of fatigue and balance loss, but that she had normal motor strength and gait. In March 1999, Dr. Jacques concluded that Bozicevich had fatigue phenomenon, but that she showed no signs of a GBS relapse or progression. In August 2001, Dr. Jacques determined that Bozicevich's reflexes and motor strength were adequate. (Id. at 223-28.)

Dr. Jacques completed medical assessments in January 2002 and January 2003. He concluded that Bozicevich can lift only five pounds due to poor grip strength, and cannot lift five pounds repetitively due to muscle fatigue. He also noted that Bozicevich can stand for only five to ten minutes, but that she can sit with no restrictions. Dr. Jacques also determined

that Bozicevich cannot climb, balance, stoop, crouch, kneel, or crawl due to arthritic knees and muscle fatigue. He also stated that Bozicevich cannot reach, push, or pull repetitively; handle items, due to dropping items and poor dexterity; feel, due to tingling and numbness; or see, due to blurry vision in the left eye. He also noted that Bozicevich mixes up words when she becomes tired. He prohibited her from heights, moving machinery, temperature extremes, chemical and dust irritants, and vibrations. (Id. at 218-19, 305-06.) In both assessments, he concluded that Bozicevich suffers from chronic fatigue syndrome as a residual effect of GBS and is unable to return to significant, gainful employment. (Id. at 316-18, 330.)

    2.    Consultative Evaluations

Psychologist Donald Wiger evaluated Bozicevich's mental status in January 2002. He noted that Bozicevich complained of problems with fatigue, blurred vision, and dropping items. Nonetheless, he concluded that Bozicevich can concentrate and understand directions, carry out mental tasks with reasonable persistence and pace, respond appropriately to coworkers and supervisors, and handle the mental stressors of the workplace. (Id. at 197.) Two other physicians similarly concluded that Bozicevich did not suffer from any mental impairment based on their review of her medical records. (Id. at 259.)

In February 2002, Dr. Aaron Mark completed a physical assessment of Bozicevich. He based his evaluation only on a review of medical records and did not rely on any statements from Bozicevich's treating physicians. Although he noted complaints of fatigue, he concluded

that Bozicevich showed no evidence of residual neurological damage from GBS. He also noted complaints of chronic knee pain, but remarked that examinations showed only mild degeneration and that Bozicevich did not experience any "real instability." He therefore discounted Bozicevich's use of a cane. (Id. at 256.)

Dr. Mark concluded that Bozicevich can occasionally lift twenty pounds and frequently lift ten pounds. He also concluded that Bozicevich can stand, sit, and/or walk six hours in an eight-hour workday, and has unlimited ability to push or pull. Dr. Mark also opined that Bozicevich has no postural limitations and can climb, balance, stoop, kneel, crouch, and crawl. He also found that she has no manipulative, visual, or communicative limitations. The only environmental limitations he found appropriate were avoidance of machinery and heights. Dr. Alan Suddard concurred with these findings. (Id. at 249-55.)

3. Testimony at the Administrative Hearing

a. Bozicevich

Bozicevich testified that fatigue precluded her from performing her former secretarial responsibilities. She further stated that she had not looked for other employment because she was "waiting for the fatigue to pass, and it hasn't happened." (Id. at 450.)

According to Bozicevich, she experiences illnesses or asthma flare-ups several times a month, which exacerbates her fatigue and causes her to sleep fourteen hours at night and nap on and off all day. (Id. at 451.) Fatigue also affects her eyesight, which sometimes inhibits

her reading and computer use. (Id. at 453-54.) Bozicevich is unable to use her hands well because she cannot grasp or carry items. (Id. at 469.) She also experiences difficulty with her knees due to arthritis and she recently experienced problems with her foot. She has severe pain while standing or walking, but has no problem sitting. She estimates that she can stand or walk for five to ten minutes; after that, she feels pain, fatigue, and loss of balance. (Id. at 452-53.)

Bozicevich described a typical day. She usually requires twelve to fourteen hours of sleep, and several more hours after awakening to be clear and coherent. She then showers, dresses, performs light housekeeping, watches television, sits at the computer, rests, prepares simple meals, and retires to bed. In addition, Bozicevich drives about once a week and occasionally walks her dog. She weekly attends church and organizes a prayer line. However, she no longer actively participates in church or other social activities. In addition, Bozicevich does not bake, shop alone, do yard work, play games, or engage in exercise. (Id. at 455-59.)

        b.       Medical Expert

Dr. Andrew Steiner, a medical expert, also testified at the hearing. He noted that the findings of fatigue were based solely on Bozicevich's subjective complaints and that no physician had actually measured the fatigue. He further remarked that there was no objective medical evidence showing that Bozicevich required a cane to ambulate. He therefore concluded that Bozicevich's impairments were severe but did not meet or equal criteria of any

impairment that was presumptively disabling, absent a finding of ongoing neurological deficits. He concluded that Bozicevich could perform work in the sedentary range, with limitations imposed by asthma. (Id. at 474-77.)

      c.     Vocational Expert

The ALJ asked vocational expert Steven Bosch to consider a hypothetical individual with education, work experience, and medical history similar to Bozicevich. The ALJ explained that the hypothetical individual had a residual functional capacity to perform a modified range of sedentary work involving occasionally lifting up to ten pounds, sitting for six hours per eight-hour workday, and walking or standing for two hours in an eight-hour workday. The ALJ instructed Bosch to rule out positions requiring repetitive operation of foot controls and exposure to dust, fumes, gases, and pulmonary irritants. Bosch testified that the hypothetical individual could perform work as a church membership secretary. (Id. at 485-86.)

The ALJ then requested that Bosch consider the additional limitation of unskilled work, based on fatigue and concentration impairments. Bosch concluded that the hypothetical individual could not perform as a church membership secretary but could perform several other jobs in significant numbers within the economy. (Id. at 486.)

5.    <u>ALJ Decision</u>

The ALJ used the five-step analysis prescribed by social security regulations to evaluate

the claim. See 20 C.F.R. § 404.1520. The ALJ determined that Bozicevich was severely impaired by a history of GBS, osteoarthritic changes and arch weakness in the left foot, degeneration of the knees, optic nerve irritation, and asthma. However, the ALJ decided that Bozicevich's subjective complaints were not supported by objective medical evidence or accepted laboratory diagnostic techniques. Based on these findings, the ALJ established that Bozicevich had the residual functional capacity to perform sedentary work with several modifications.[1] Ultimately, the ALJ determined that Bozicevich could return to her past relevant work as a church membership secretary and therefore denied benefits.

**DISCUSSION**

Magistrate Judge Boylan concluded that the ALJ improperly discounted the opinions of Bozicevich's treating physicians and Bozicevich's subjective complaints. He further recommended that disability benefits be awarded outright. Commissioner Barnhart objects to these findings and recommendation.

**A.     Standard of Review**

An ALJ's decision will be upheld if it is supported by substantial evidence. 42 U.S.C. § 405(g); Johnson v. Apfel, 210 F.3d 870, 874 (8th Cir. 2000). Substantial evidence "is less than a preponderance, but is enough that a reasonable mind would find it adequate" to support

---

[1] Specifically, the ALJ found that Bozicevich could perform work that involved occasional lifting of ten pounds, standing and/or walking for two hours in an eight-hour workday, sitting for six hours in an eight-hour workday, and that did not require repetitive operation of foot pedals or exposure to environmental irritants.

the ALJ's conclusion. McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000). The Court considers evidence that detracts from the ALJ decision as well as evidence that supports it. Id. The Court should not reverse the ALJ's decision merely because the evidence could support another conclusion. Hensley v. Barnhart, 352 F.3d 353, 355 (8th Cir. 2003).

**B.      Weight Accorded to the Treating Physician**

Commissioner Barnhart argues that the ALJ properly discounted the opinions of Bozicevich's treating physicians. Opinions of physicians who have treated a claimant receive controlling weight if they are well supported by medically acceptable diagnostic techniques and not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); Forehand v. Barnhart, 364 F.3d 984, 986 (8th Cir. 2004) (citation omitted).

The ALJ declined to give controlling weight to Drs. Duthoy and Jacques, reasoning that the physicians relied solely on Bozicevich's subjective complaints and did not support their opinions with objective medical findings. In addition, the ALJ found that their opinions were inconsistent with the medical evidence in the record:

> Though the claimant continued to report symptoms of numbness and tingling in the upper and lower extremities and fatigue, no further hospitalization had been required [since March 1996] and neurological evaluations consistently demonstrated symmetric reflexes and good motor strength. During [annual] follow-up evaluations with Dr. Jacques . . . the claimant had very good reflexes, good strength, still alleged symptoms of fatigue, was found to be neurologically stable, benefiting from the use of Paxil, and advised to comply with yearly evaluations sooner if any major problems were encountered. The record does not indicate that the claimant required any evaluations or treatment other than periodic yearly follow-ups with Dr. Jacques.

(R. at 17 (internal citations omitted).)

The ALJ's proffered reasons for discounting the treating physicians' opinions are unavailing. The lack of diagnostic tests does not automatically undermine the treating physician's conclusion that chronic fatigue substantially interfered with Bozicevich's daily activities. Indeed, fatigue is a phenomenon that is not readily identified during standard neurological testing. (R. at 144-45, 423). See also Delgehausen v. Barnhart, No. 03-4124, 2004 WL 1922126, at *3 (D. Minn. Aug. 27, 2004) (Montgomery, J.) (treating physician reasonably relied on claimant's self-reports because "fatigue often eludes objective measurement."). The record is devoid of any evidence that suggests the treating physicians ever questioned the veracity of Bozicevich's subjective complaints. To the contrary, the treatment records, although sporadic, consistently note that Bozicevich suffered from extreme fatigue, blurred vision, and balance problems. Cf. Reed v. Barnhart, 399 F.3d 917, 921 (8th Cir. 2005) (ALJ may discount a treating physician's medical assessment where the limitations listed on the form "stand alone" and were never previously disclosed); Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996) (administrative law judge properly discounted treating physician's opinion when the opinion conflicted with other medical evidence). Accordingly, the treating physicians reasonably relied on Bozicevich's self-reports in evaluating her chronic fatigue.

Moreover, the opinions of the consulting physicians were not supported by better or more thorough medical evidence. See Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000) (administrative law judge may discount or disregard a treating physician's opinion when "other medical assessments are supported by better or more thorough medical evidence"). First, the opinions are of limited value because the consultants had little or no contact with Bozicevich.

11

Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998) (opinion of a consulting physician who examines a claimant once or not at all generally does not constitute substantial evidence); Charles v. Barnhart, 375 F.3d 777, 783 (8th Cir. 2004) ("Generally, if a consulting physician examines a claimant only once, his or her opinion is not considered substantial evidence, especially if the treating physician contradicts the consulting physician's opinion."). Second, none were specialists in neurology.  Kelley, 133 F.3d at 589 (opinion of a non-specialist who disagrees with a specialist about medical issues related to the specialty is usually not substantial evidence).

Drs. Duthoy and Jacques have treated Bozicevich for several years.  Although they did not regularly evaluate her, their diagnoses were consistent.  Moreover, their opinions were consistent with other evidence in the record.  Accordingly, the ALJ erroneously failed to give controlling weight to the opinions of the treating physicians.

**C.    Credibility Analysis**

Commissioner Barnhart argues that the ALJ properly discredited Bozicevich's subjective complaints of fatigue, lack of balance, and problems with memory and concentration. The ALJ found that objective medical evidence and Bozicevich's course of treatment were inconsistent with the complaints.

When assessing the credibility of a claimant's subjective complaints, the ALJ must consider all the evidence, giving particular attention to: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions.  Polaski

v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  The ALJ may discount subjective complaints if the complaints are inconsistent with the evidence as a whole.  Id.  The ALJ's factual findings are entitled to deference if they are sufficiently substantiated by the record.  Ramirez v. Barnhart, 292 F.3d 576, 581 (8th Cir. 2002).  However, the ALJ must make an express credibility determination detailing reasons for discrediting the testimony and must identify the inconsistencies.  Kelley, 133 F.3d at 588.

The ALJ erred when analyzing Bozicevich's subjective complaints.  Bozicevich's daily activities are consistent with her subjective complaints of fatigue, lack of balance, and poor memory and concentration.  Undisputed evidence shows that Bozicevich is unable to perform many of the daily activities she once enjoyed.  Since the onset of these impairments, Bozicevich frequently relies on family to assist her and possesses a limited ability to perform household tasks.  Indeed, the ALJ specifically found that Bozicevich performed daily activities "slowly and over an extended period of time."  (R. at 19.)

The "ability to engage in personal activities such as cooking, cleaning, and hobbies does not constitute substantial evidence that [an individual] has the functional capacity to engage in substantial gainful activity."  Kelley, 133 F.3d at 589; see also Reed, 399 F.3d at 923 ("the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work") (citation omitted); Banks v. Massanari, 258 F.3d 820, 832 (8th Cir. 2001) ("How many times must we give instructions that [watching television, visiting friends, and going to church] do not indicate that a claimant is able to work full time in our competitive economy?").  Accordingly, the ALJ

13

erred in placing too much weight on Bozicevich's ability to perform simple daily tasks.

The ALJ also erred in finding that Bozicevich did not need a cane before December 31, 2000. (R. at 18.) The record shows otherwise. In 1996, a physician recorded that Bozicevich used a cane to walk. (Id. at 162.) In January 2001, Dr. Duthoy prescribed a cane to aid in walking, and noted that Bozicevich had used a cane for several years. Moreover, the record further shows that Bozicevich still requires a cane. Indeed, an agency consultant noted that Bozicevich walked slowly and used a cane. (Id. at 194.) And in January 2003, Dr. Duthoy noted that Bozicevich could stand and/or walk in only five-minute intervals due to balance problems, and that she needed a cane to avoid falling. (Id. at 323.)

Finally, the ALJ erred in disregarding Bozicevich's complaints of memory or concentration impairments. Although Dr. Wiger concluded that Bozicevich had adequate concentration and memory, his opinion was based on a one-time evaluation and is inconsistent with assessments by her treating physicians.

The ALJ should have considered Bozicevich's complaints of fatigue, lack of balance, and impaired memory and concentration. Because the ALJ failed to consider this subjective evidence, the residual functional capacity finding was erroneous.

**D.     Remand**

When the Commissioner improperly denies a claimant benefits, the Court normally remands the case to the ALJ for further administrative proceedings. Ingram v. Barnhart, 303 F.3d 890, 895 (8th Cir. 2002) (citation omitted). However, the Court may remand and order an award of benefits if the evidence overwhelmingly supports a finding of disability. Id.

14

Based on a careful review of the record, the Court agrees with the Magistrate Judge that substantial evidence in the record supports a finding of disability in this case. However, evidence in the record does not meet the "overwhelming evidence" standard that would permit the Court to enter an immediate finding of disability. Because the Court cannot reweigh evidence or substitute its own judgment for that of the ALJ, Stephens v. Shalala, 46 F.3d 37, 39 (8th Cir. 1995), the Court reluctantly remands this case for further administrative proceedings rather than enter an immediate finding of disability. On remand, the ALJ should further develop the record to determine whether, considering all Bozicevich's impairments, she could perform jobs available in significant numbers in the national economy.

**CONCLUSION**

After conducting a de novo review of the record, the Court concludes that the ALJ erred in discounting the opinions of treating physicians, discrediting Bozicevich's subjective complaints, and failing to consider Bozicevich's chronic fatigue, lack of balance, and memory and concentration impairments in the Residual Functional Capacity. The Court therefore adopts in part the recommendation of the Magistrate Judge, finding that there is not substantial evidence in the record to support the conclusion of the ALJ, but remands the case for further development of the record in light of this opinion. Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment (Docket. No. 11) is **GRANTED in part** and **DENIED in part**;

2. Defendant's Motion for Summary Judgment (Docket No. 14) is **DENIED**;

3. The Court **ADOPTS in part** and **REJECTS in part** the R&R (Docket No. 17);

4. Defendant's Objections to the R&R (Docket No. 18) are **OVERRULED in part** and **SUSTAINED in part**; and

5. This case is **REMANDED** to the ALJ for further proceedings consistent with this Memorandum and Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: March 28, 2006

                 s/ Paul A. Magnuson
                 Paul A. Magnuson
                 United States District Court Judge